IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-02150-WDM-MJW

ANDREW C. BROWN,

    Plaintiff,

v.

EDWARD E. BURR,

    Defendant.

**ORDER ON MOTION TO DISMISS**

Miller, J.

This matter is before me on Defendant Edward E. Burr's Motion to Dismiss (Docket No. 4). After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion is granted in part and denied in part.

<u>Standard of Review</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

Background

This case surrounds a real estate transaction for property in Steamboat Springs, Colorado. According to the complaint, on March 18, 2006 Grand Summit Resort Properties, Inc. ("Grand Summit") held an auction for 35 condominium units and 237 fractional share units (sold in 1/8 fractional shares) in the Steamboat Grand Resort Hotel & Condominiums ("Steamboat Grand"). According to the terms of the auction, a successful bidder was required to submit a deposit of $5,000 per 1/8 fractional share purchased and sign a Purchase and Sale Agreement Acknowledgment form ("Purchase Agreement"). The balance of the purchase price and a 10% buyer's premium for the auction house sales commission was due and payable at a closing to be held within 30 days of the auction. Prospective bidders could utilize a buyer broker, who would receive a 2% commission at closing from Grand Summit, provided that the bidder register the broker before the auction.

Both Plaintiff and Defendant attended the auction on March 18, 2006 as prospective bidders. Defendant registered his buyer's agent, Tony Walton, prior to the auction. Plaintiff did not have a buyer's agent; however, he did seek investment advice from Grant Fenton, an investment advisor who leased office space from Plaintiff. During the auction, Fenton sat between Plaintiff and Defendant and his registered

agent, Walton.  Plaintiff was the successful bidder on two properties: whole ownership of Penthouse 8 and a 1/2 fractional interest in Condo 438 (the "Properties").  When the auction house representative came with the Purchase Agreement for Penthouse 8, the first property for which Plaintiff was the highest bidder, Plaintiff requested that Walton serve as his buyer's broker and proposed that the two split the 2% broker commission.  Although Walton agreed, the auction house did not as Walton was not registered as Plaintiff's buyer's broker prior to the start of the auction.  Thereafter, according to Plaintiff, he requested from Defendant the use of Defendant's bidder number on the Purchase Agreement so that Walton could serve as the buyer's broker on the transaction.  The complaint alleges that the parties agreed that title would be transferred to Plaintiff either at closing directly from Grand Summit or after closing from Defendant.

Allegedly based on this agreement, Defendant's bidder number was used for the transaction, Defendant signed the Purchase Agreement, and Defendant paid the $40,000 deposit due by credit card.  Notably, Plaintiff did not use the $50,000 certified check that he brought to the auction for the deposit nor give this money to Defendant.  The paperwork for Condo 438 was processed the same as that for Penthouse 8.  Plaintiff alleges that at all times he believed that he was the rightful purchaser of both Penthouse 8 and Condo 438, meaning that he would reimburse Defendant for the deposit payments and Defendant would transfer title to Plaintiff at some point in the future.  After the auction was completed, Plaintiff alleges that he and Defendant discussed the possibility of forming a partnership to own and operate the Properties and other condominium units purchased separately at the auction by both Plaintiff and Defendant.  The parties agreed to continue the discussions of a partnership over the

weekend.

After the auction, Plaintiff attempted to reimburse Defendant for the deposit amounts Defendant paid at the auction for the Properties, but Defendant refused payment without explanation. However, the parties did enter into negotiations to form a limited liability company called Blue Sky Vacations, LLC ("Blue Sky"). As the paperwork for Blue Sky was not finished by the closing date for the Properties, the parties allegedly agreed that Defendant would take title to the Properties and then transfer title to Blue Sky once the paperwork was completed. Plaintiff argues that he understood the oral agreement to provide that if the paperwork was not completed for Blue Sky, then the Properties would be transferred to Plaintiff in exchange for payment to Defendant of the purchase price and reasonable carrying costs. Legal title was transferred to Defendant via special warranty deeds on March 28, 2006, May 11, 2006, and May 16, 2006.[1] Citing communication difficulties with Defendant and others, Plaintiff opted not to participate in Blue Sky in June 2006. Thereafter, Plaintiff sought legal title to the Properties, but Defendant refused. This litigation ensued.

## Discussion

Plaintiff's complaint asserts six claims for relief: (1) unjust enrichment; (2) declaration of a resulting trust; (3) adjudication of rights pursuant to Colo. R. Civ. P. 105[2]; (4) breach of implied contract; (5) breach of fiduciary duty; and (6) an accounting

---

[1] It is not clear from the complaint why there are three warranty deeds for only two properties.

[2] Colo. R. Civ. P. 105 addresses "Actions Concerning Real Estate" and provides in relevant part:
(a) Complete Adjudication of Rights. An action may be brought for the

for all revenues procured and expenses incurred by Defendant in relation to the Properties. Defendant moves for dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6) for a number of different reasons. I will address each of Defendant's arguments in turn.

1. <u>Colorado Auction Law</u>

Defendant argues that Plaintiff has no interest in the Properties because Plaintiff did not comply with the conditions of the auction itself including paying the deposit and executing the Purchase Agreement. Plaintiff responds that the claim does not center on an agreement between him and the seller of the property, but rather around an agreement between him and Defendant, the purchaser of the Properties. As such, Plaintiff argues, it is irrelevant that Plaintiff did not comply with the conditions of the auction. I agree. Plaintiff is not making a claim against the seller of the Properties; instead he is making a claim against the purchaser of the Properties based on an alleged agreement that took place completely separate from the sale of the Properties from the seller to Defendant. Therefore, whether Plaintiff complied with the terms of the auction is irrelevant and dismissal of Plaintiff's claims is not appropriate on these grounds.

2. <u>Statute of Frauds</u>

---

purpose of obtaining a complete adjudication of the rights of all parties thereto, with respect to any real property and for damages, if any, for the withholding of possession. The court in its decree shall grant full and adequate relief so as to completely determine the controversy and enforce the rights of the parties. The court may at any time after the entry of the decree make such additional orders as may be required in aid of such decree.

Next, Defendant argues that Plaintiff's breach of contract and quiet title claims must be dismissed for failure to comply with the writing requirement of the statute of frauds. Plaintiff responds that his partial performance of the oral agreement is an exception to the statute. Plaintiff argues that he partially performed under the oral agreement by (1) allowing Defendant to sign the Purchase Agreements at the auction, pay the deposit money, take title to the Properties; (2) choosing a name for the company Plaintiff would form with Defendant; and (3) negotiating an operating agreement for Blue Sky. Defendant replies that the doctrine of partial performance is inapplicable to this case because Plaintiff has not shown that the terms of the agreement were certain and unambiguous. I agree with Defendant.

In Colorado, "[e]very contract . . . for the sale of any lands or any interest in lands is void unless the contract or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party by whom the lease or sale is to be made." Colo. Rev. Stat. § 38-10-108. However, the statute of frauds is "inapplicable where partial performance of an alleged oral agreement occurs." *Nelson v. Elway*, 908 P.2d 102, 116 (Colo. 1995). Indeed, "a plaintiff's full or partial performance of an oral agreement, when done in reasonably justifiable reliance thereon, is sufficient to overcome a statute of frauds defense." *Kiely v. St. Germain*, 670 P.2d 764, 769 (Colo. 1983) (citation omitted). "The part performance doctrine will apply if there is part performance of an oral contract which is: (1) substantial; and (2) required by, and fairly referable to no other theory besides that allegedly contained within the oral agreement." *Nelson*, 908 P.2d at 108. But, to remove a contract from the statute of frauds, the plaintiff must demonstrate that the terms of the agreement are "definite, certain, clear,

and unambiguous." *Mestas v. Martini*, 155 P.2d 161, 164 (Colo. 1944); *accord WCN Inv. V. Tosh Okano Commc'n, Inc.*, 513 P.2d 1070, 1072 (Colo. Ct. App. 1973). It must have the "degree of certainty that would be required in written contracts sought to be specifically enforced."[3] *Mestas*, 155 P.2d at 164–65. "[T]he element of completeness denotes that the contract embraces all the material terms; that of certainty denotes that each one of these terms is expressed in a sufficiently exact and definite manner." *Id.* at 165. For a contract to be enforced by specific performance, "all the terms which the parties have adopted, as portions of their contract, must be finally and definitely settled, and none must be left to be determined by future negotiation. . . ." *Id.*

In this case, Plaintiff alleges that he formed an "understanding" with Defendant both at the auction and after the auction. At the auction, Plaintiff alleges that he and Defendant agreed that Defendant would sign the Purchase Agreement and pay the requisite deposit amount on the Properties but would transfer title to Plaintiff at some point in the future, either before or after the closing date, at which time Plaintiff would reimburse Defendant for the deposit amounts. Assuming for purposes of this motion, without deciding, that there was adequate consideration for such a contract, the terms of the contract were not "definite, certain, clear, and unambiguous." *Id.* at 164. Not only was the time for transfer of the Properties left open to be determined at an unknown later time based on unknown factors but Plaintiff also asserts that the parties contemplated that the transfer may not be to Plaintiff but would be to a partnership

---

[3] I note that in this case, although not specifically articulated by Plaintiff, Plaintiff in effect seeks specific performance as the complaint requests, *inter alia*, that the Properties be conveyed to Plaintiff.

entity that the parties may form together. Furthermore, with respect to any "understanding" that the parties came to during their subsequent negotiations concerning the limited liability company, the terms of that agreement were admittedly never finalized. As these material terms were left open to further negotiation, part performance of the alleged contract cannot alleviate the necessity of compliance with the statute of frauds.[4] *Id.* Therefore, Plaintiff's claims based on breach of a contract[5] shall be dismissed for failure to comply with the statute of frauds. *See* Colo. Rev. Stat. § 38-10-108.

3. Resulting Trust

Defendant also argues for dismissal of Plaintiff's claim for a resulting trust because the complaint fails to allege an essential element required for imposition of a resulting trust—Plaintiff's payment of the purchase price. *See Page v. Clark*, 592 P.2d 792, (Colo. 1979) (addressing three instances in which a resulting trust arises).[6] I agree

---

[4] Because I conclude that the contract was not sufficiently definite and clear to allow part performance to render the statute of frauds inapplicable, I do not reach the issue of whether Plaintiff's alleged part performance was sufficient to satisfy the doctrine. *See Nelson*, 908 P.2d at 108; *Siler v. Inv. Sec. Co.*, 244 P.2d 877, 881 (Colo. 1952); *L.U. Cattle Co. v. Wilson*, 714 P.2d 1344, 1347–48 (Colo. Ct. App. 1986).

[5] As Defendant points out, Plaintiff's claim of implied contract is inconsistent with the basic law which requires an agreement which is clear and unambiguous. Regardless of whether the theory is an implied or express contract, an alleged vague understanding, supposedly partially performed, does not satisfy the statute of frauds.

[6] In *Page*, the Colorado Supreme Court articulated three situations leading to imposition of a resulting trust:
> (1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust estate; and (3) where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person. In each of these cases there is an inference that the person taking title to the property

with Defendant that this case does not fit neatly within one of the *Page* scenarios. On the other hand, I agree with Plaintiff that Colorado law does not limit resulting trusts to the three particular situations identified in *Page* as subsequent cases have broadened the definition of resulting and other trusts. In *Shepler v. Whalen*, 119 P.3d 1084 (2005), the Colorado Supreme Court adopted the definitions and analysis set forth in George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees*, § 451, at 225 (2d Ed. Rev. 1991) (hereinafter Bogert), including the distinction between resulting trusts and constructive trusts. Resulting trusts are "intent-enforcing trusts" while constructive trusts are "fraud-rectifying trusts." 119 P.3d at 1089. Constructive trusts are those based upon breach of contractual or fiduciary duties, fraud or other wrongdoing while a resulting trust concerns "only those where the trust is established upon the basis of actual or presumed intent of the settlor. In short, resulting trusts arise from bonafide transactions, while constructive trusts are imposed in cases of fraudulent transfers." *Id.* A resulting trust is imposed where the beneficial interest in property is with one other than the person actually holding title while a constructive trust is enforced in favor of creditors to prevent fraud. *Id.*

Plaintiff argues that an older Colorado case is strong precedent for his resulting trust claim. In *McPherrin v. Fair*, 57 Colo. 333, 141 P. 472 (1914) plaintiff had an agreement with an Iowa owner to buy Colorado land and told the defendant of his intention. Defendant volunteered to consummate the transaction, including obtaining a

---

is not intended to have the beneficial interest, and in each of these cases the inference arises from the character of the transaction.

*Page*, 592 P.2d at 797; *accord Shepler*, 119 P.3d at 1089 (citing *id.*).

"deed for" plaintiff. Plaintiff agreed and offered to provide the defendant with the purchase money but was told that the defendant would advance the money as a loan to plaintiff who could later repay him when the deed was obtained. In fact, the defendant obtained the deed in the name of another and the lawsuit resulted. 141 P. at 473. The court concluded that a resulting trust was created by operation of law:

> Thus the case presented by the record is one where an agent for the purchase of land pays the money of his principal for it, takes the title in his own name, and claims it for his own. The authorities are unanimous that, in such a case, a trust results in favor of the principal, and the facts out of which the trust arose may be proven by parole. *Id.* at 474.

Plaintiff argues that the facts as alleged in the complaint fit the pattern of *McPherrin*: Plaintiff was entitled to purchase the property as the low bidder, Defendant agreed to act in Plaintiff's behalf, including paying the purchase price, Defendant took the title in a name other than the Plaintiff and has refused to convey the property to the Plaintiff even though Plaintiff has tendered the amount due. Accordingly, Plaintiff asserts the complaint properly states a claim for a resulting trust.

Recent Colorado law suggests a somewhat different analysis and conclusion. In *Shepler* the Colorado Supreme Court closely linked its reasoning to the Bogert trust analysis which groups or classifies trusts as either "intent enforcing" or "fraud rectifying," with the latter being the constructive trust. Within the "intent enforcing" class, Bogert includes the following:

> (1) Cases where the settlor has by words clearly expressed an intent to have a trust exist; (2) cases in which the settlor has expressed in words an ambiguous intent, which the court examines and finds to be a trust intent; and (3) cases in which the settlor has expressed no intent by words, but in which he has done acts other than talking or writing from which the court finds an intent that a trust arise. In this latter case would fall what are usually called resulting trusts.

Bogert, § 451. In *Shepler*, the court expressly adopted this limited definition of resulting trusts:

> Resulting trusts can loosely be classified as "intent-enforcing" trusts where "the settlor has expressed no intent by words, but she has done acts other than talking or writing from which the court finds an intent that a trust arise." 119 P.3d at 1089 (quoting Bogert).

This limited definition seems to rule out a resulting trust claim because the alleged facts are that Plaintiff did express his intent verbally so that a resulting trust could not be established. However, the same facts would seem to meet the other definitions of an "intent enforcing" trust, namely a situation where the Plaintiff, as settlor, clearly expressed an intent to create a trust or where the Plaintiff used words of ambiguous intent where the facts could determine that a trust exists. Bogert, § 451.

I conclude that the circumstances surrounding the transfer of property may plausibly result in an "intention enforcing trust." Taking the allegations in the light most favorable to Plaintiff, the parties may have intended to create a trust for the benefit of Plaintiff. These allegations include the general character of the transaction, the fact Plaintiff was the "winning bidder," that Plaintiff allegedly entered into an agreement with Defendant that Defendant would sign the Purchase Agreement, take title to the property but later transfer the properties to Plaintiff or to entities in which Plaintiff has an interest.

Therefore, dismissal of Plaintiff's claim for a resulting trust, construed as a claim for an "intent enforcing" trust, is not warranted.[7] I recognize that this result may be

---

[7] There is some indication that a resulting trust may not be a claim unto itself, but merely a remedy. *See Bryant v. Cmty. Choice Credit Union*, 160 P.3d 266, 276 (Colo. Ct. App. 2007) (upholding trial court's dismissal of a claim for a resulting or constructive trust because "such trusts are remedial in nature and are inappropriately pled as a separate cause of action"). The *Bryant* court held that a "plaintiff may argue these

inconsistent with the statute of frauds unless the case falls within an established exception such as Colo. Rev. Stat. § 38-10-107. I am not satisfied with the parties development of this issue. Accordingly, this ruling is without prejudice to further legal argument concerning the statute of frauds.

4. <u>Unjust Enrichment and Accounting</u>

With respect to Plaintiff's unjust enrichment and accounting claims, Defendant argues that Plaintiff's claims should be dismissed because Plaintiff has not asserted a legally viable interest in the Properties. First, Defendant argues that Plaintiff's unjust enrichment claim fails because Plaintiff did not transfer anything of value to Defendant because Plaintiff did not have a legal interest in the Properties. Defendant contends that this is demonstrated by Plaintiff's request for transfer of the Properties *in exchange for* the full amount paid for the Properties by Defendant. Plaintiff responds that he transferred the opportunity to purchase the Properties at a discounted price to Defendant and that the below market value that Defendant paid for the Properties constitutes the thing of value that Defendant unjustly gained. With respect to the accounting claim, Defendant argues that Plaintiff's claim fails because Plaintiff is only

---

remedy theories in support of her other claims, they are not theories of liability." *Id.* However, the *Bryant* court's basis for such a holding does not appear to support the statement, see *Mancuso*, 818 P.2d at 737–39, and *Bryant* itself appears to more appropriately apply only to constructive trusts, see *Bryant*, 160 P.3d at 276 (upholding dismissal of plaintiff's claims entitled "resulting and constructive trusts" under which she requested "that a constructive trust be imposed"). Furthermore, the definition of a resulting trust used by Colorado courts does not indicate that it is merely a remedy. *See Mancuso*, 818 P.2d at 739 ("A resulting trust is a trust implied by law when the circumstances surrounding the transfer of property raise the inference that the parties intended to create a trust.") Therefore, I conclude that Plaintiff's claim for a an implied intent enforcing trust should not be dismissed as improperly pled as a separate cause of action.

entitled to an accounting if he has some legally valid interest in the Properties, which is not present here. Plaintiff does not respond to this argument, however, I conclude that the accounting may be a viable claim if it is determined that Defendant was unjustly enriched or that the events resulted in a resulting trust for the benefit of Plaintiff. I also conclude that the complaint contains sufficient allegations to sustain an unjust enrichment claim.

"Unjust enrichment is a form of quasi-contract or contract implied in law that does not depend in any way upon a promise or privity between the parties." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2007) (citing *DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119 (Colo. 1998)). "To recover under a theory of quasi-contract or unjust enrichment, a plaintiff must show (1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1096–97 (Colo. 1982); *see Robinson*, 179 P.3d at 1007 (An unjust enrichment claim arises when "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." (citing *DCB*, at 119-20)). When a defendant has been unjustly enriched, "[t]he scope of the remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another." *Robinson*, 179 P.3d at 1007 (citations omitted).

In this case, the complaint alleges that use of Plaintiff's bidding number enabled

Defendant to purchase the Properties, which he may not otherwise have been able to purchase at the auction as he was not the high bidder. Making all inferences in favor of the Plaintiff, this could be construed as a benefit conferred on Defendant by Plaintiff. Furthermore, Defendant received the benefit as he currently has title to the Properties. Finally, if indeed the only reason Defendant was able to purchase the Properties was that he entered into an oral agreement with Plaintiff in which he agreed to transfer the Properties back to Plaintiff, then it would be unjust for Defendant to retain title to the Properties in violation of such oral agreement. Therefore, I conclude that Plaintiff has stated a claim upon which relief can be granted.

5. <u>Fiduciary Duty</u>

Finally, Defendant argues that Plaintiff's claims for breach of fiduciary duty must fail because Defendant owed no fiduciary duties to Plaintiff as they had no confidential or fiduciary relationship prior to the auction. Plaintiff responds that he is not claiming that a confidential relationship gave rise to Defendant's fiduciary duties, but rather that such duties stemmed from Defendant's control of the Properties. Although I do not agree with Plaintiff that control of the property gave rise to a fiduciary relationship, I do conclude that Plaintiff's claim for a breach of fiduciary duties is viable. "A resulting trust . . . involves a fiduciary relationship between the trustee and the beneficiary, although the relation may not be as intense as in the case of an express trust." *First Nat'l Bank v. Harry W. Rabb Found.*m, 479 P.2d 986, 989–90 (Colo. Ct. App. 1970). Therefore, I conclude that the resulting trust may form the basis to impose fiduciary duties on Defendant and dismissal is not appropriate at this time.

Accordingly, it is ordered:

1. Defendant's Motion to Dismiss (Docket No. 4) is granted in part and denied in part.

2. Plaintiff's claim for breach of implied contract is dismissed with prejudice.

3. All other claims remain pending, pursuant to this Order.

DATED at Denver, Colorado, on August 28, 2008.
                                             BY THE COURT:


                                           s/ Walker D. Miller
                                           United States District Judge